*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 20, 2022

Plaintiff-Appellee,

v

No. 350514
St. Clair Circuit Court
LC No. 19-001030-FH

ROMERO JULIUS POTTS,

Defendant-Appellant.

Before: BOONSTRA, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for possession of more than 50 grams but less than 450 grams of Oxycodone, MCL 333.7403(2)(a)(*iii*),[1] and possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*).[2] Defendant was sentenced, as a second-offense drug offender, MCL 333.7413(1),[3] to concurrent terms of 16 ½ to 40 years' imprisonment and 5 ¼ to 8 years' imprisonment, respectively.

---

[1] The penalty for this crime is not more than 20 years' imprisonment "or a fine of not more than $250,000.00, or both." MCL 333.7403(2)(a)(*iii*).

[2] The penalty for this crime is not more than 4 years' imprisonment "or a fine of not more than $25,000.00, or both." MCL 333.7403(2)(a)(*v*).

[3] In relevant part, MCL 333.7413 provides:

> (1) . . . an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both.
>
> * * *
>
> (4) For purposes of subsection (1), an offense is considered a second or subsequent offense, if, before conviction of the offense, the offender has at any time been

-1-

On appeal, defendant argues he was deprived of the effective assistance of counsel at sentencing because his retained attorney was ill-prepared, relied on outdated caselaw, and failed to advocate on his behalf. Defendant contends that counsel's failings prejudiced him because he would not have incurred the double penalty authorized under the repeat-drug-offender statute if counsel had simply stipulated to sentence him under the general habitual-offender statute. We disagree and affirm defendant's sentences.

## I. BACKGROUND

This case arises out of the execution of a search warrant related to defendant's drug activities. The police located over 600 pills secreted in the basement and a small amount of crack cocaine hidden in the garage of defendant's girlfriend's home.

The prosecution charged defendant with possession of the Oxycodone and with possession with intent to deliver the cocaine, MCL 333.7401(2)(a)(*iv*), providing notice that it sought an enhanced sentence under the fourth or subsequent habitual-offender statute, MCL 769.12,[4] if defendant was convicted.

---

convicted under this article or under any statute of the United States or of any state relating to a narcotic drug, marihuana, depressant, stimulant, or hallucinogenic drug.

[4] In pertinent part, MCL 769.12 provides:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

* * *

(b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

(c) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for a maximum term of not more than 15 years.

(d) If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461.

At trial, law enforcement officers testified about the search, the drugs found, the lack of use paraphernalia, and defendant's admissions. Defendant challenged the prosecution's ability to meet its burden of proof, highlighting the testing of a few pills, the evidence showing that defendant resided elsewhere, the failure to record defendant's alleged admissions, and the lack of evidence showing that defendant intended to deliver the cocaine.

The jury convicted defendant as charged as to the Oxycodone and convicted him of a lesser possession charge as to the cocaine. Immediately after the jury was dismissed, the trial court sought to enter a judgment of conviction and addressed the habitual-offender notice, inquiring whether defense counsel preferred the court to question defendant regarding his prior convictions or whether counsel could acknowledge them.

At that point, defense counsel questioned whether defendant was charged as a habitual offender under the general habitual-offender statute or under the repeat-drug-offender statute. The prosecution indicated that it had elected to proceed under the general habitual-offender statute. Defense counsel suggested that there was caselaw that required the prosecution to proceed under the repeat-drug-offender statute, MCL 333.7413; however, he was unprepared to discuss the applicability of that statute. Counsel then asked for an opportunity to prepare a sentencing memorandum as the relevant research pertaining to the question was at his office.

The prosecutor opined that caselaw required her to elect between the two statutes, an opinion that the trial court shared. The court again inquired as to how defense counsel wanted to proceed. Counsel offered to acknowledge defendant's prior convictions and submit a memorandum of law regarding the applicable sentence-enhancement statute. When the court asked whether the enhancement charged was in the prosecutor's discretion, defense counsel answered that he was unsure because he had had an earlier criminal case before a different circuit court judge who determined that enhancement under the repeat-drug-offender statute was required. Defense counsel again asked for an opportunity to brief the question. Recognizing that the case had been charged under the general habitual-offender statute, the trial court afforded counsel a limited time to brief the question while ensuring that the prosecution's election to proceed under the general habitual-offender statute was not a waiver of its ability to proceed under the repeat-drug-offender statute.

Defendant then admitted to the following prior felony convictions:

- March 2009 – delivery and/or manufacture of less than 50 grams of a controlled substance,

- March 2009 – attempted maintaining a drug house,

---

A major controlled substance offense includes a violation of MCL 333.7403(2)(a)(*i*) to (*iv*). MCL 761.2(b). Possession of Oxycodone, MCL 333.7403(2)(a)(*iii*), is a major controlled substance offense, but possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), is not.

- January 2013 – delivery and/or manufacture of less than 50 grams of a controlled substance,

- December 2013 – possession of less than 25 grams of a controlled substance, and

- September 2014 – delivery and/or manufacture of less than 50 grams of a controlled substance.

Defense counsel subsequently filed a brief, citing caselaw supporting his contention that the prosecution was required to proceed under the repeat-drug-offender statute rather than the general habitual-offender statute given that defendant's prior convictions were all drug offenses. See *People v Edmonds*, 93 Mich App 129, 135; 285 NW2d 802 (1979) ("As a specific and comprehensive measure the [controlled substances] act's sentence-augmentation provision controls over the general habitual offender statute.").

In response, the prosecution agreed, and, later, filed a separate sentencing memorandum. Therein, the prosecutor referenced a post-trial jail call defendant made to his girlfriend where he asked her to collect monies owed for an earlier drug delivery.

Defense counsel responded to the prosecution's sentencing memorandum two days before sentencing. Defense counsel cited *People v Lowe*, 484 Mich 718; 773 NW2d 1 (2009), for the proposition that a sentencing court is not required to score Prior Record Variables (PRVs) when a defendant is sentenced under the repeat-drug-offender statute.

On the day scheduled for sentencing, the prosecution responded that *Lowe*'s obiter dicta on that point had been explicitly rejected in *People v Peltola*, 489 Mich 174; 803 NW2d 140 (2011). The prosecution attached a copy of *Peltola* to its written response.

At sentencing, the trial court began by addressing defense counsel's failure to cite to *Peltola*. Counsel conceded that he had "overlooked *Peltola*" and agreed it was controlling. The court verbalized its displeasure over defense counsel's error as it could have been misled.

The trial court then asked defense counsel about his position with respect to the jail call between defendant and his girlfriend. Defense counsel attempted to defer the question to defendant directly, but the trial court informed counsel that he was there to advocate for his client. Defense counsel then explained that the jail call was taken out of context and actually pertained to an earlier loan defendant made to a male coworker to assist him with paying his rent. As for the call's "reference to a gram or 1.2," defense counsel shared that he and defendant had discussed that defendant discovered marijuana, which he did not want or use, and another person took it. The court opined that defendant's actions constituted delivery, but defense counsel insisted that the marijuana did not belong to defendant or the other person; therefore, it was not delivered.

The prosecutor denied that the jail-call conversation was taken out of context and further denied that it was related to rent. Instead, according to the prosecutor, defendant explained that he intended to collect the debt owed for the gram after the first day of trial, but failed to do so because he had fallen asleep. After the second day of trial, defendant was convicted and his bond was

revoked so he could not retrieve the money owed. In the prosecutor's view, defendant advised his girlfriend to collect an outstanding drug debt for him.

The court followed up with defense counsel, asking if he had any response. Defense counsel continued to rely on his earlier comments.

The trial court indicated that it had reviewed the tape. The trial court determined that nothing was taken out of context. The discussion pertaining to "1.2 grams" and "money owed" occurred in "the same conversational sequence." Nothing pertaining to rent was discussed.

And, although the parties now agreed that the general habitual-offender enhancement was inapplicable, that information was not shared with the probation department. Thus, the presentence investigation report had to be corrected to reflect that defendant's maximum sentence for the Oxycodone conviction was forty years' imprisonment, not life, and that defendant's maximum sentence for the cocaine conviction was eight years' imprisonment, not fifteen. Moreover, when the prosecutor suggested that the maximum-minimum sentence for the cocaine conviction would be six years, defense counsel noted that it would be two-thirds of eight years, or five- and one-quarter years' imprisonment, not six.

The parties agreed that defendant's minimum sentencing guidelines' range began at 99 months. Defense counsel argued that the court should impose the minimum sentence based on defendant's current possession convictions and recent employment. The prosecution argued that the court should exercise its discretion and double defendant's minimum sentence given his prior record.

During defendant's allocution, he apologized for his poor choices. Defendant attributed his prior criminal behavior to his drug addiction. Defendant claimed that the jail call related to money he had loaned his cousin for rent and he urged the court to listen to a subsequent jail call. Defendant further apologized for giving his cousin marijuana that defendant had found in his pocket.

The trial court opted to exercise its discretion under MCL 333.7413(1) and it doubled defendant's minimum sentencing guidelines range to 198 months. See *Lowe*, 484 Mich at 731-732 ("MCL 333.7413[1] authorizes the trial court to double both the minimum and maximum sentences in order to double defendant's 'term otherwise authorized.' ") The court then sentenced defendant to that minimum, imposing 16 ½ to 40 years' imprisonment for the Oxycodone conviction, and, thereafter, imposing a sentence of 5 ¼ to 8 years' imprisonment for the cocaine conviction under MCL 333.7413(1).

After filing a claim of appeal, defendant, represented by new counsel, filed a motion for a new trial and a *Ginther*[5] hearing or, alternatively, for resentencing. In particular, defendant argued that his trial counsel requested the imposition of the double penalty and failed to object to evidence presented at sentencing.

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Following additional briefing, the trial court heard defendant's motion. Appellate defense counsel argued that defendant was entitled to resentencing "at a minimum" because his trial counsel never advised him regarding the applicability of the repeat-drug-offender statute. The prosecutor maintained that defense trial counsel's performance was not deficient, and, in any event, defendant was not prejudiced because, even if the general habitual-offender statute applied, defendant's minimum sentencing guidelines were 99 to 320 months' imprisonment. In contrast, under the repeat-drug-offender statute, defendant's minimum sentence remained 99 months' imprisonment, but could be doubled to 198 months' imprisonment. And regardless of who raised the question of which sentence-enhancement statute applied, the trial court's duty was to correctly apply the law, which it did.

After hearing the parties' arguments, the trial court denied defendant's motion. The trial court determined that it had properly sentenced defendant under the repeat-drug-offender statute. Moreover, even if the general habitual-offender statute applied, defendant was exposed to a "far greater" penalty under that statute than under the repeat-drug-offender statute. And, although the trial court did not necessarily believe that defense trial counsel had improperly advised defendant, even if he had, defendant was not prejudiced because there was "probably a snowball[']s chance in hell [that] he would have got[ten] a 99[-]month minimum given his [prior criminal] record."

This appeal followed.

## II. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004), citing *LeBlanc*, 465 Mich at 579. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016) (citation omitted).

## III. DISCUSSION

## A. APPLICABILITY OF *CRONIC*

On appeal, defendant first argues this Court should analyze trial counsel's performance under *United States v Cronic*, 466 US 648, 659-661; 104 S Ct 2039; 80 L Ed 2d 657 (1984), rather than *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), because counsel did not subject the prosecutor's case to "meaningful adversarial testing." *Cronic*, 466 US at 656. To support his argument, defendant notes that: (1) trial counsel was unprepared to discuss sentencing issues after the jury returned its verdict, (2) trial counsel advocated using the repeat-drug-offender statute to sentence defendant, leading to a higher minimum sentencing guidelines range than defendant would have faced under the general habitual-offender statute, and (3) trial counsel did not advocate for defendant at sentencing. Defendant also relies on *People v Harris*, 185 Mich App 100; 460 NW2d 239 (1990), and contends that trial counsel's failure to investigate the ramifications and applicability of the repeat-drug-offender statute constitute "prima facie

evidence of incompetence" under *People v Lewis*, 64 Mich App 175, 183-184; 235 NW2d 100 (1975). We disagree.

This case does not fall under one of the rare situations outlined in *Cronic*. *Cronic* established three situations when a presumption of prejudice arises from ineffective assistance and requires a new trial: (1) "the complete denial of counsel," (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when the circumstances surrounding the case "ma[k]e it so unlikely that any lawyer could provide effective assistance that ineffectiveness [is] properly presumed without inquiry into actual performance at trial." *Cronic*, 466 US at 659-661. The second exception, upon which defendant relies, requires counsel's failure to be complete. *Bell v Cone*, 535 US at 685, 696-697; 122 S Ct 1843; 152 L Ed 2d 914 (2002).

The record in this case reveals that counsel prepared two memoranda in anticipation of sentencing. Counsel reviewed the presentence investigation report with defendant. Counsel advocated for a minimum sentence under the guidelines and counsel addressed the jail call after discussing it with defendant. In other words, counsel did not completely fail to represent defendant at sentencing.

Moreover, defendant's reliance on *Harris* is misplaced. In *Harris*, this Court reversed the trial court's denial of the defendant's motion for a new trial on the basis of ineffective assistance of counsel under *Strickland*, not *Cronic*. *Harris*, 185 Mich App at 104. This Court determined that counsel's performance during trial in combination "with his statements at sentencing" warranted a new trial. *Id.* At sentencing, Harris's counsel argued for a prison term "despite [Harris's] request for probation." *Id.* at 105. Moreover, Harris's counsel "made no attempt to argue that [Harris's] prison term be short" in spite of the sentencing guidelines' recommendation of a minimum sentence of eighteen months to three years' imprisonment. *Id.* Instead, Harris's "counsel's conduct at sentencing showed a total failure to advocate on his client's behalf," including failing to "argue for [any] mitigation of the sentence." *Id.*

None of the failings attributed to Harris's counsel occurred in this case. Trial counsel did not present an argument that was expressly contrary to defendant's wishes. Trial counsel conferred with defendant and advocated for the minimum sentence under the guidelines. And, consistent with the law, counsel advocated for sentence enhancement under the repeat-drug-offender statute rather than the general habitual-offender statute. See *Edmonds*, 93 Mich App at 135. See also MCL 333.7413(1) and MCL 769.12(1)(d), requiring a court to enhance a defendant's sentence under Article 7 of the Public Health Code, MCL 333.7101 *et seq.*, "[i]f the subsequent felony is a major controlled substance offense . . . ." Although application of the repeat-drug-offender statute potentially increased defendant's minimum sentencing guidelines for the Oxycodone conviction from 99 months' imprisonment to 198 months' imprisonment, defendant's maximum sentence was reduced from life to 40 years' imprisonment and defendant's maximum sentence for the cocaine conviction was reduced from fifteen to eight years' imprisonment. In comparison, under the general habitual-offender statute, MCL 769.12(1)(b), although the possibility that the court could sentence defendant to 99 months' imprisonment remained, there was also a possibility that the court could impose a minimum sentence of 320 months' imprisonment for the Oxycodone conviction and still remain within the guidelines' recommendation. MCL 777.13m; MCL 777.21(3)(c); MCL 777.63. In fact, the trial court remarked that the prosecutor was being "extremely" or "quite generous" by seeking 198 months' imprisonment, indicating that it may

have imposed a higher sentence had defendant been sentenced under the general habitual-offender statute. Stated otherwise, if the general habitual-offender statute applied, defendant was subject to a minimum sentence well above the 198 months' imprisonment he received under the repeat-drug-offender statute. Thus, unlike the defense counsel in *Harris*, trial counsel did not advocate for a harsher sentence by urging the court to apply the correct sentence-enhancement provision. See also Michigan Rule of Professional Conduct (MRPC) 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of his client and not disclosed by opposing counsel . . . .").

Admittedly, trial counsel was initially unprepared to discuss sentencing issues after the jury returned its verdict, but counsel raised the question of which sentence-enhancement provision should apply as a result of his prior experience in another criminal matter. After some discussion, both the trial court and the prosecutor were also uncertain about which sentencing-enhancement provision applied to defendant. Trial counsel then repeatedly sought, and was granted, the opportunity to brief the issue before sentencing. Moreover, after trial counsel briefed the issue, the prosecutor agreed that the law required application of the repeat-drug-offender statute. And despite trial counsel's error in citing *Lowe* rather than *Peltola*, counsel read the controlling case, admitted his error, and advocated for defendant by presenting potential mitigating factors in an attempt to convince the trial court to impose the minimum sentence under the guidelines. The record demonstrates that trial counsel was diligent and did not completely fail defendant at sentencing. Therefore, *Strickland*, not *Cronic*, controls the outcome in this case.

## B. INEFFECTIVE ASSISTANCE UNDER *STRICKLAND*

Defendant argues that trial counsel was ineffective for numerous reasons: (1) he failed to correct the trial court's statement that the parties stipulated to apply the repeat-drug-offender statute, (2) he was unprepared to argue a sentencing issue immediately after the jury returned its verdict, (3) he "[f]ail[ed] to competently research and draft [a] legal memorandum filed with the court," (4) he failed to object to the jail call discussed at sentencing, and (5) he attempted to have defendant explain the jail call rather than advocating on defendant's behalf. Finally, defendant argues that he was prejudiced by trial counsel's deficient performance because, under the repeat-drug-offender statute, defendant's minimum sentencing guidelines' recommendation and maximum sentences were doubled, which would not have occurred if he had been sentenced under the general habitual-offender statute. We disagree.

To succeed on a claim for ineffective assistance of counsel, a defendant must satisfy the two-part test established in *Strickland*, and adopted by our Supreme Court in *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). First, "defendant must show that counsel's performance was deficient." *Strickland*, 466 US at 687. To do so, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Second, a defendant must show counsel's "deficient performance prejudiced" him. *Id*. at 687. This requires the defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Defendant first argues that trial counsel's performance was deficient because he failed to correct the trial court after it said: "I would note that the parties stipulated that [d]efendant should be sentenced under MCL 333.7413 as a second drug offender." While it is true the parties specifically stipulated that the prosecutor did not waive the right to sentence defendant under the repeat-drug-offender provision after trial, trial counsel later filed a memorandum supporting his position that defendant's sentence had to be enhanced under the repeat-drug-offender statute rather than the general habitual-offender statute. The prosecutor agreed with defendant's legal position in the written response she filed.

A stipulation is "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." *Black's Law Dictionary* (11th ed). Stipulations are "binding upon the parties" and "should be enforced unless good cause is shown to the contrary." *People v Williams*, 153 Mich App 582, 587; 396 NW2d 805 (1986) (citation omitted).

In their written memoranda, the parties agreed that defendant's sentences should be enhanced under MCL 333.7413, and trial counsel did not perform deficiently when he failed to object to the court's reference to their agreement as a stipulation. But, even if defense counsel had performed deficiently by failing to object, defendant was not prejudiced when the trial court properly enhanced his sentences under the repeat-drug-offender statute. *Edmonds*, 93 Mich App at 135. See also MCL 333.7413(1) and MCL 769.12(1)(d).[6]

Defendant next argues that trial counsel was ineffective because he was not versed in the applicability of the repeat-drug-offender statute. It was not objectively unreasonable for trial counsel to be unprepared to discuss a sentencing issue immediately after trial. Instead, he appropriately requested time to further research the sentencing issue and was correct in his initial assertion that the repeat-drug-offender statute applied to defendant. Trial counsel's request to file a sentencing memorandum had no impact on the sentencing date. Therefore, trial counsel's representation of defendant did not fall below an objective standard of reasonableness. And, even if it had, defendant cannot show that but for trial counsel's deficient performance, the outcome of the proceedings would have been different because the sentencing court followed the law and properly applied the repeat-drug-offender statute to enhance defendant's sentence. *Id*.

Defendant also argues trial counsel was ineffective because he relied on outdated caselaw in his response to the prosecutor's sentencing memorandum. Trial counsel relied on *Lowe* to support his position that the trial court should not consider PRVs in determining defendant's sentence under the repeat-drug-offender provision. However, *Peltola*, a case decided after *Lowe*, held trial courts should score the PRVs when calculating a defendant's minimum sentence range when the defendant's sentence is subject to the repeat-drug-offender provision. *Peltola*, 489 Mich at 190. *Peltola* was not a recent case, but was decided in 2011. Defendant's sentencing occurred

---

[6] Specifically, MCL 769.12(1)(d) states, "[i]f the subsequent felony is a major controlled substance offense, the person shall be punished as provided by part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461." Defendant's Oxycodone conviction was a major controlled substance offense. MCL 761.2(b) and MCL 333.7403(2)(a)(*iii*).

in 2019, eight years after *Peltola* was decided. Consequently, it should not have been difficult for trial counsel to find *Peltola*. Therefore, trial counsel's performance with respect to his reliance on *Lowe* likely fell below an objective standard of reasonableness. Regardless, trial counsel's performance did not prejudice defendant. The prosecution's response cited *Peltola*. Defense counsel admitted his oversight, reviewed *Peltola*, and defendant's sentencing proceeded under the correct caselaw.

Defendant further argues that trial counsel failed to advocate for him by failing to object to the use of the jail call and was unprepared to discuss it. While trial counsel did not object to the use of the jail call between defendant and his girlfriend, defendant now suggests that this "evidence" was improperly admitted. But, "proper sentencing, tailored to each individual defendant, requires a broad inquiry into the defendant's background." *People v Potrafka*, 140 Mich App 749, 753; 366 NW2d 35 (1985). And the rules of evidence, "other than those with respect to privileges," do not apply to sentencing proceedings. MRE 1101(b)(3). Accordingly, the trial court properly considered the jail call at sentencing, and "counsel [was] not ineffective for failing to raise [a] meritless or futile objection[]." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Moreover, contrary to defendant's argument, trial counsel discussed the jail call at sentencing. Although trial counsel initially attempted to defer to defendant to directly respond to the court's inquiry about the jail call, trial counsel indicated that he had listened to the telephone conversation and discussed it with defendant. Trial counsel contended the conversation was taken out of context. Counsel attempted to characterize the call as discussing a loan to someone so that that person could pay for rent. And, after obtaining defendant's permission to reveal the content of their earlier discussion, counsel explained that "[t]he reference to a gram or 1.2" concerned marijuana taken by defendant's cousin. Defendant himself offered these same explanations during his allocution. And counsel suggested that the court should discount the jail call as defendant's convictions involved possession, not delivery. Consequently, defense counsel's performance did not fall below an objective standard of reasonableness and, even if it had, defendant has not shown that he was prejudiced.

Defendant also argues that but for trial counsel raising the question, he would have been sentenced as a habitual offender rather than a repeat drug offender, reducing his minimum sentencing guidelines range. Initially, we again note that counsel owes a duty of candor to the court. See MRPC 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . ."). Furthermore, the trial court or the prosecution could have recognized that the repeat-drug-offender statute applied given the nature of defendant's prior convictions. In any event, as previously discussed, defendant was not prejudiced when the trial court correctly applied the repeat-drug-offender enhancement. *Edmonds*, 93 Mich App at 135. See also MCL 333.7413(1) and MCL 769.12(1)(d).

Finally, defendant argues that the trial court failed to properly analyze trial counsel's conduct and, instead, found that defendant was not prejudiced because he could have received the same sentence under the general habitual-offender statute as he had under the repeat-drug-offender statute. But to succeed on his ineffective assistance of counsel claim, defendant had the burden of showing trial counsel's performance fell below an objective standard of reasonableness and that

-10-

defendant was prejudiced by counsel's deficient performance. *Strickland*, 466 US at 687-688. If defendant does not meet one of these prongs, then he cannot succeed on his claim; it does not matter if trial counsel's performance was deficient if it did not prejudice defendant. *Id*. at 687 (finding "[u]nless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.").

Affirmed.

/s/ Mark T. Boonstra
/s/ Elizabeth L. Gleicher
/s/ Anica Letica